UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**TERRI A. SOMERS**                                                                    **PLAINTIFF**

**V.**                      **NO. 4:19CV00393 BRW-JTR**

**ANDREW SAUL,**
**Commissioner of Social Security Administration**[1]                    **DEFENDANT**

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction:

Plaintiff, Terri A. Somers ("Somers"), applied for disability benefits on May 20, 2016, alleging disability beginning on February 5, 2016. (Tr. at 14). After

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

1

conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 25). The Appeals Council denied her request for review. (Tr. at 1). Thus, the ALJ's decision now stands as the final decision of the Commissioner.

For the reasons stated below, this Court should reverse the ALJ's decision and remand for further review.

## II. The Commissioner's Decision:

The ALJ found that Somers had not engaged in substantial gainful activity since the alleged onset date of February 5, 2016. (Tr. at 16). At Step Two, the ALJ found that Somers had the following severe impairments: disorder of the back, arthritis of the knees, and fibromyalgia. *Id*.

After finding that Somers's impairments did not meet or equal a listed impairment (Tr. at 19), the ALJ determined that Somers had the residual functional capacity ("RFC") to perform work at the light exertional level, except that she could only occasionally climb, balance, crawl, kneel, stoop, and crouch. (Tr. at 20). Notably, there were no mental restrictions incorporated into the RFC.

The ALJ found, based on Somers's RFC and testimony from a Vocational Expert ("VE"), that Somers was able to return to her past relevant work as a water treatment plant instructor and a chemical radiation technician. (Tr. at 25). Both jobs have a Specific Vocational Profile of 6, making them skilled jobs. (Tr. at 85). In

2

accordance with the ALJ's Step Four determination, he found that Somers was not disabled. *Id.*

## III. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*,

784 F.3d at 477.

B. Somers's Arguments on Appeal

Somers contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the ALJ: (1) failed to fully develop the record; (2) erred at Step Two when he failed to find mental conditions to be severe impairments; (3) erred in his assessment of Somers's subjective complaints; and (4) erred in his RFC determination. For the following reasons, the Court finds support for reversal, based upon the record development claim.

The ALJ reasons that Somers did not have mental impairments that met the severity requirement, based on the fact that she only sought specialized psychiatric treatment at the end of the relevant time-period. However, treating physicians and consulting examiners found significant mental impairments throughout the period.

Brett Prince, Ph.D., examined Somers in February 2015. (Tr. at 503-506). Somers reported anxiety, depression, trouble with concentration, memory, and sleep, and poor energy and stress tolerance. *Id*. Dr. Prince diagnosed rule-out post-traumatic agitated depression, post-traumatic anxiety disorder, and cognitive dysfunction. (Tr. at 505-506). He recommended weekly psychotherapy and weekly biofeedback sessions. *Id*. He stated that Somers "continues to experience a very significant level of emotional-behavioral, sleep, and pain symptoms and distress

4

which markedly interfere with daily adaptive, vocational, and psychosocial/familial functioning, and she requires mental health care." (Tr. at 506). He recommended increasing Cymbalta.[2] *Id*.

On August 16, 2016, Victoria Miller, Ph.D., examined Somers. (Tr. at 369-371). Somers reported irritability and anxiety, as well as disrupted sleep. *Id*. She said she had limited contact with people. *Id*. Dr. Miller diagnosed Somers with adjustment disorder with mixed anxiety and depressed mood. (Tr. at 371).

The record contains a puzzling report from non-examining disability expert Barbara Hernandez, Psy.D., dated September 2, 2016. (Tr. at 95). She said that based on the medical evidence of record and Somers's reported activities of daily living, "a severe [mental] condition is suspected, but considering Somers doesn't have any mental health treatment, this case will be projected to August 16, 2017. By that date and with the correct and consecutive treatment and medication, it is expected that Somers's emotional symptoms will not last 12 months [and that] they will decrease to a mild level or disappear." *Id*. The ALJ gave Dr. Hernandez's report great weight, in spite of her pure conjecture about conditions a year in the future.

Somers routinely reported depression, anxiety, and insomnia to her PCPs. (Tr. at 346, 394, 389, 394, 399, 540, 553). Dr. Neil Brodsky, M.D., diagnosed primary

---

[2] Somers treated her mental disorders with Cymbalta, Ambien, diazepam, and Valium. (Tr. at 592-598).

insomnia, dysthymic mood, and generalized anxiety disorder. (Tr. at 382). Dr. Jeffrey Hodges, M.D., diagnosed insomnia and anxiety disorder. (Tr. at 542).

Somers did see a therapist, Becky Taylor, LCSW, in the summer of 2018 (Tr. at 679-696). Somers filled out a mental illness screening form at that visit, indicating moderate to severe problems in most mental functional areas. *Id*. Ms. Taylor noted poor insight and depressed and irritable mood. (Tr. at 689). Ms. Taylor found that symptoms caused clinically significant distress or impairment in social, occupational, or other areas of functioning. *Id*. She noted continued difficulty managing life skills. *Id*. Ms. Taylor recommended weekly therapy. (Tr. at 683).

Somers said she could not do much more than watch TV and read as part of her daily routine. (Tr. at 282-285). Her fiancé testified at the hearing that he had to take care of most of Somers's needs. (Tr. at 79-83). He mentioned a "fibro fog" that interfered with attention and concentration, causing slurred speech and unclear thinking. *Id*. Both Somers and her fiancé indicated that financial shortfall kept Somers from attending regular mental health therapy.[3] *Id*. The ALJ did not mention the testimony from Somers's fiancé.

---

[3] Failure to treat, in and of itself, does not mean a serious condition is not present, especially when a claimant cannot afford treatment. Individuals with chronic mental disorders commonly have their lives structured in such a way as to minimize stress and reduce their signs and symptoms, which may explain a lack of specialized treatment. 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.00(E) (1999). And Somers did treat throughout the relevant time-period with psychiatric medication, and she consistently reported mental problems to her providers.

The ALJ gave only some weight to the two examining specialists (Dr. Prince and Dr. Miller) and he gave great weight to the non-examining specialists, both of whom found no mental impairment. (Tr. at 95, 126). As a result, the ALJ determined that mental conditions were non-severe at Step Two. Because of that, he included no mental limitations in the RFC, and found that Somers could return to her past work. Her past jobs were SVP 6, which means skilled work. Skilled work requires specific qualifications, the use of judgment, and performance of mechanical or manual tasks. https://secure.ssa.gov/apps10/poms.nsf/lnx/0425015017. Skilled work can include jobs that require a person to work closely with others, or with figures, facts, or ideas that require complex, abstract, or critical thinking. *Id*. It involves setting realistic goals and making plans independently, and it encompasses abstract ideas and problem solving. *Id*. It takes at least six months and often many years to train for and learn a skilled job. *Id*.

Somers argues that the RFC for skilled work outstripped her mental abilities. A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate

consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). The ALJ bears the primary responsibility for assessing a claimant's RFC – that is, what he or she can still do, in spite of severe impairments. The finding must be based on all relevant evidence in the record. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010).

The ALJ did not afford proper weight to the two examining doctors' opinions, which conclusively found serious mental impairments, and he ignored Somers's therapist's opinion that her mental conditions caused significant occupational impairment. The multiple diagnoses and treatment with psychiatric medication demonstrate that Somers had difficulty due to mental illness. At the least, the ALJ should have further developed the record by ordering a consultative examination, but the evidence, as it is, provides support for a finding that mental conditions were severe at Step Two. Beyond that, it appears far-fetched that a woman with "a significant level of distress that would markedly interfere with daily adaptive and vocational functioning," (Tr. at 506, Dr. Prince), could perform work at the skilled level. This means that the RFC determination and the Step Four finding were clearly erroneous.

### III. <u>Conclusion</u>:

For the reasons stated above, the Court finds that the ALJ's decision is not

supported by substantial evidence. The ALJ erred at Step Two and Step Four.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further review.

DATED this 30th day of March, 2020.

_____
UNITED STATES MAGISTRATE JUDGE